The State, for use, etc., v. Butler.

15L 113
2pi 634

THE STATE, for use, etc., in the matter of Minor Meriwether, *v.* W. E. BUTLER *et al.*

1. RECEIVER. *Trustees. Attorney's fee.* A receiver of an extinct corporation appointed by act of the Legislature with compensation fixed, may employ counsel to defend or bring suits in relation to his duties, and to pay for such services, yet he cannot, under a retainer by himself, charge the fund for legal services performed by himself. The employment of counsel and the payment of proper allowance for such services, when necessary, require the exercise of a sound discretion on the part of receivers or trustees of the fund out of which

8—VOL. 15.

The State, for use, etc., *v.* Butler.

the payment is to be made. It would be as unsafe to allow a receiver or trustee to contract with and pay himself for such services as to allow him to purchase the trust property, which it is his duty to sell at the best advantage.

2. SAME. *Attorney's fees.* While the receiver, under the act appointing him receiver, may not be entitled to payment for his own professional services, the Legislature has the power to provide, by a subsequent act, that such services may be paid for, even though the services may have been performed before the legislative provision.

FROM SHELBY.

Appeal from the Chancery Court at Memphis. W. W. McDOWELL, Ch.

W. M. RANDOLPH for complainants.

SMITH & COLLIER and MINOR MERIWETHER for defendant.

FREEMAN, J., delivered the opinion of the court.

In 1879 the Legislature repealed the charter of the city of Memphis, and among other things " transferred all the indebtedness for taxes, or otherwise, whether in litigation or otherwise, due to said municipality," to the State, to be disposed of as should thereafter be provided by law. All suits then pending were to be finally prosecuted under this act. This act was on its face a general law as to all corporations having 35,000 inhabitants by the Federal census of 1870. Memphis being the only city having this number of inhabitants by that census was the only municipality affected by it. By a subsequent act of the same Legislature it was enacted as to such cor-

porations or taxing districts, "the Governor of the State shall appoint an officer for such extinct corporations respectively, to be known as 'receiver and back-tax collector,'" who was to take the oath required of other collectors of public revenue, and give bond with sureties, to be approved by the county court in which such extinct corporation was situated. He was to make a statement of his collections to the chancery court.

By section 4 of the act, it was provided "that for the purpose of collecting the revenue embraced in the provisions of the act, the receiver and back-tax collector is empowered and authorized to file a general creditors' bill, in the name of the State, in behalf of all the creditors against all the delinquent tax-payers who owed taxes to the extinct corporation at the time of the repeal or surrender of the charter." Other provisions followed, regulating the details of this suit as to process and other things. All pending suits were to be revived in the name of the State, and consolidated with the general proceeding." The court in this suit was authorized to adjust all "equities, priorities and liens, and to give all relief, both to defendants and creditors, that might be given if there were as many suits as there are creditors and delinquent tax-payers." In a word, the whole pending interests of the repealed corporation and its creditors were to be adjusted in this way by one suit, and the corporation affairs wound up and finally closed.

By the eighth section of the act: "The compensation of the receiver and back-tax collector of the extinct corporation of Memphis is fixed at $2,000

per annum," but after two years the county court was authorized to fix the salary, not, however, to exceed this sum. The receiver was authorized to employ an assistant by section 9, "his compensation not to exceed $100 per month for the time he should be in actual service." Under these provisions, as was natural and must have been foreseen, an immense crop of litigation sprang up: First, a contest arose in the Federal courts between the receiver and back-tax collector and a receiver appointed by the Federal court at Memphis, as to which should have charge of the administration of the fund. This suit was earnestly contested by Mr. Meriwether, who had been appointed to the office created by the act. It was carried to the Supreme Court of the United States, and there decided in favor of the right of the State officer. Numerous other suits were litigated under the provision we have quoted under the general bill filed as directed by the act, the details of which we need not notice. It suffices to say that Meriwether was an attorney-at-law, and as such gave his services earnestly, and as the record shows, as well as to our own knowledge, most indefatigably, to the prosecution and defense of all these cases. He now files the petitions before us, asking additional compensation for his legal services over and above the salary attached to his office by the act quoted in the *Garrett case*, the one involving the contest between the receivers, among other things.

That Meriwether is an officer, appointed by the Governor, with duties fixed by the law under which he was appointed, is beyond question. That the col-

lection of the back taxes, involving the adjustment of many matters that would be litigated, as well as the contest of claims of creditors and adjustment of equities growing out of these claims, were part of the duties of the office, is equally clear. The bill provided for was by its express terms to include and involve all this, and this bill the receiver was to file.

The Garrett suit is the only contest not fairly contemplated in the duties assigned him, but the contest there made was eminently a proper one.

While we may assume that the appointment of an officer to an office like this, part of the duties of which are to bring or defend suits, fairly involved the right to employ counsel to perform the legal duties, for which he would be allowed in his settlement all reasonable fees paid, or contracted to be paid, by him, yet quite a different question is presented when such an officer, with a fixed salary, asks compensation for his own services, under a retainer by himself. It is true it was held by this court that where there were three executors, one of whom was a lawyer, who, by agreement, was to attend to the legal duties, that the attorney might in such case be allowed for legal services rendered the estate: *Fulton* v. *Davidson*, 3 Heis. R., 643. While we do not deem it proper to overrule this case on its facts, it suffices to say that it should not be extended beyond what has been decided by it, and has no application to a case like the one in hand, of a public officer, with duties all defined, and compensation fixed by law for such services.

The language of Chancellor Walworth, in the matter of the *Bank of Niagara,* 6 Paige R., 215, announces the sound rule in such a case, that case being a receiver of · an insolvent bank, appointed by the chancellor.   He says : " The receiver was not entitled to charge for extra counsel fees to himself in addition to the legal taxable costs in suits prosecuted or defended by himself as attorney or solicitor, nor was he entitled to any allowance in the character of counsel for himself or his co-receiver in relation to any other matter.   The employment of counsel and the payment of proper allowance for such services, when necessary, requires the exercise of a sound discretion on the part of the receivers or trustees of the · fund out of which the payment for such services is to be made.   It would, therefore, be as unsafe to allow a receiver or trustee to contract with and pay himself for such extra services as it would be to allow him to become the purchaser of the trust property, which it is his duty to sell to the best advantage of the estate.   If he employs third persons as counsel, and where he has no interest in employing and paying them for services which are not absolutely necessary, there is comparatively little danger that the estate intrusted to his care will be charged with counsel fees which might safely have been dispensed with." The particular case before us is one in which these words have peculiar force, as it presented a fruitful source of temptation to contests of every kind which it would not be proper to impose upon the receiver. The temptation to earn fees as counsel was liable to

warp his judgment, and is more than human nature ought to be required to meet in the execution of so important a trust.

This question is, however, disposed of in this case by the act of 1883, entitled an act to amend the former acts on this subject. By section 2 it is enacted, "That section 8 of chapter 92 of act of March 13, 1879, be and the same is hereby so amended as to authorize the chancery court to allow to the receiver and back-tax collector, in addition to his salary as fixed by said section for performing the duties of receiver and back-tax collector, reasonable compensation for such legal services as he may heretofore have rendered, or may hereafter render, in defense of suits against, or prosecution of claims by, such extinct municipality."

This act, no doubt passed at the instance of the receiver, is a legislative construction of more or less weight that such compensation was not deemed proper under the law amended, therefore required a special enactment for the purpose. In view of the evident reasons of policy against allowance of such compensation, we may fairly assume this legislative construction conclusive.

But under this section it is clear, if it be valid, the receiver is entitled to "reasonable compensation for such legal services as he may have rendered, or may thereafter render, in defense of suits against, or prosecution of claims by, such extinct municipality," in addition to his salary, and this allowance is to be made by the chancery court, as required by this act.

It is argued that this is a retrospective law, and creditors of the extinct corporation have the right to resist it, as impairing or impinging on their vested rights. We see no force in this objection. It is but an allowance made by the Legislature by way of compensation to an officer appointed under its authority for services rendered in securing, protecting and accumulating the fund. As we have said, such compensation might have been allowed if paid to other attorneys employed, and the result would have been the same to the creditors. The only objection to it is based on the impolicy of allowing a party occupying the position of a trustee to employ himself. The Legislature clearly had the right to remove this objection in this case, and has done so, and we do not think any one else can complain.

The claim is for $2,000 extra compensation in the Garrett case. The chancellor has allowed $1,200. The proof shows that in all the cases the receiver had the assistance of able and learned counsel, who have been paid. He is to be allowed only for legal services, strictly as such, and not for the incidental duties of his office, such as scrutinizing claims presented, and the like, as claimed in the bill. For all work in his office he has been compensated, and had in addition the services of two assistants part of the time, at all times one, we believe. It is for services rendered in courts, or in the character of an attorney in prosecution or defense of suits, a reasonable compensation is to be allowed.

The testimony of one or two lawyers familiar with

the services rendered, and of two others, who, from their opinion from examination of the papers in the case, and from the statements of the petition as to what the services were, show the compensation claimed to have been reasonable, in their opinions. The statements of the petition contain much that is not the basis of compensation allowed by the statute, services that were not legal services, such as were intended to be compensated.

We conclude he was, under the act of 1883, entitled to reasonable compensation for such services under the statute cited. We have the testimony of two attorneys who knew the service rendered, who think the $2,000 claimed is reasonable. But the chancellor, in view of all the facts, with a knowledge of what had been done, taking a broader view of the facts, and no doubt considering the assistance had in the services of other attorneys, has fixed it at $1,200. We think he was correct. The opinions of the attorneys were no doubt based on the fact of his having done legal service in cases of importance without making allowance for assistance. The witnesses are the men who rendered the main services, and felt some delicacy, no doubt, in estimating the fees of a brother attorney in such a case. We, therefore, adopt the view of the chancellor as to the amount, being based on a more correct estimate of the force of the facts before him.

The result is, the decree is affirmed with costs of this court divided; costs below out of the fund.

We have a petition for re-examination of this case,

which we would perhaps have done on our own motion. The point on which the re-examination was desirable is, as to whether the Garrett case was a suit against the extinct municipality, so as to be strictly included in the statute. On examination we find it was. It was commenced before the repeal of the charter to enforce collection of judgment debts to a large amount, and by amended bill the suit was prosecuted to reach the assets of the municipality transferred to the receiver. The case is embraced by the act of 1883. We see no reason to change what we have held as to right of Legislature to give proper compensation to an attorney for legal services rendered, after they have been rendered, than before, where the service has been actually rendered.

The petition will be dismissed.